**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRINT YOUR PLAQUES LLC, on behalf of itself and all others similarly situated,<br><br>                        Plaintiffs,<br><br>       -against-<br><br>ESQUIRE BANK N.A. and INFINITY CAPITAL LLC *doing business as* CHOICE MERCHANT SOLUTIONS,<br><br>                        Defendants. | **FIRST AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br>Case No. 2:24-cv-1077-JMA-SIL<br><br><br>**JURY TRIAL DEMANDED** |

PRINT YOUR PLAQUES LLC ("Plaintiff"), by and through its attorneys, brings this action on behalf of itself and all others similarly situated against Defendants ESQUIRE BANK N.A. and INFINITY CAPITAL LLC *doing business as* CHOICE MERCHANT SOLUTIONS (collectively "Defendants"). Plaintiff hereby alleges, on information and belief, except as those allegations that pertain to the named Plaintiff, as follows:

### SUMMARY OF THE ACTION

1.      This is a federal class action that asserts claims for breach of contract against Defendants, who offer payment processing services to merchants to enable the merchants to accept card payments from their customers. Plaintiff brings this action on behalf of a Class of merchants (defined below) who have contracted with Defendants for payment processing services by entering into Defendants' standard form merchant agreement.

2.      This case arises out of Defendants' breach of its standard form merchant agreement by deceptively charging merchants "Monthly Chargeback Violation" fees without proper disclosure, in excess of the amount allowed under the terms of the merchant agreement.

3.      This action seeks damages from Defendants on behalf of a Class of merchants who have been harmed by Defendants' assessment of excessive "Monthly Chargeback Violation" fees

in breach of the terms of the merchant agreement. This action further seeks injunctive relief barring Defendants from continuing this unfair and deceptive practice.

## THE PARTIES

4.      Plaintiff PRINT YOUR PLAQUES LLC ("Plaintiff") is and was at all relevant times a limited liability company organized under the laws of Delaware with its principal place of business located in Alpharetta, Georgia. The members of Plaintiff are natural persons who are domiciled in and citizens of Puerto Rico. Plaintiff is an online merchant who entered into the Choice Merchant Agreement, as defined below in paragraphs 21-22, with Defendants. Like all online businesses that market goods and services (collectively "Products") to consumers, Plaintiff requires the ability to accept cards as payment from consumers for its Products. Plaintiff contracted with Defendants for this purpose.

5.      Defendant ESQUIRE BANK N.A. ("Esquire") is and was at all relevant times a National Association with its designated main office and principal place of business located at 100 Jericho Quadrangle, Suite 100, Jericho, New York.

6.      Defendant INFINITY CAPITAL LLC *doing business as* CHOICE MERCHANT SOLUTIONS ("Choice") is and was at all relevant times a limited liability company organized under the laws of Connecticut, with its principal executive offices located at 10 Columbus Boulevard, Sixth Floor, Hartford, Connecticut. Upon information and belief, the sole member of Choice is a natural person, John Paul Golino, who is domiciled in and a citizen of Connecticut.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1332(d). The aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs; the number of members of the proposed Class exceeds 100; and many members of the proposed Classes are citizens of different states than the Defendants. Upon information and belief, fewer than two-thirds of the proposed Class members are citizens of New York.

8.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

9.      Venue lies within this district under 18 U.S.C. § 1965 and 28 U.S.C. § 1391. Esquire is headquartered in Jericho, New York, and Defendants conduct a substantial amount of business in this district, including by contracting with members of the Class using Defendants' standard form merchant agreement and charging merchants the "Monthly Chargeback Violation" fee.

10.     Choice provides services on behalf of Esquire under Esquire's merchant acquiring program. Choice is sponsored by Esquire to Visa and Mastercard as a registered third-party agent and member service provider of Esquire. Thus, the transactions, services, acts and omissions giving rise to this Complaint occurred in New York, and Plaintiff was injured in New York. Moreover, Choice has purposefully availed itself of the forum and directed its activities to New York by virtue of its relationship with Esquire, and the Class members' claims against Choice arise out of Choice's New York contacts.

11.     The Choice Merchant Agreement described herein, which gives rise to the Class members' claims against Defendants, selects New York law under its choice-of-law provision.

## FACTUAL ALLEGATIONS

### A.      *Background on Payment Processing*

12.     In order to accept debit and credit cards ("payment cards") as payment over the Internet, a business (commonly referred to as a "merchant" in the payment processing industry) must first open a "merchant account" for payment processing services with a member bank of Visa Inc., Mastercard International Inc., Discover Financial Services LLC, American Express and/or other networks (collectively, the "Card Brands").

13.     Such member banks have direct agreements with the Card Brands that enable them to process payments made by holders of payment cards issued by the Card Brands to purchase goods and services from "merchants" that contract with such member banks for payment processing services. This process is called "acquiring," and the banks are commonly referred to as "acquirers," in the payments industry.

14.     In providing payment processing services to merchants, each acquiring bank is required to strictly comply—and ensure the strict compliance of both its third party agents and its

3

merchants—with a comprehensive set of rules and standards promulgated and periodically updated from time to time by the Card Brands (the "Card Brand Rules") as a contractual condition of the bank's membership agreements with the Card Brands. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS Inc.*, 59 S.W.3d 63, 66 (Tenn. 2001) ("Only banks and other similar financial institutions may become members of the Visa and Mastercard associations. These banks enter into membership agreements with Visa and Mastercard; the agreements incorporate the rules and regulations of Visa and Mastercard and allow the member banks to provide credit card processing services.").

15.      Acquirers, in turn, may contract with third party organizations and sponsor them for registration with the Card Brands to provide processing-related services ("Program Services") to merchants in support of the acquirer's merchant program (the "Program").

16.      As recited in the Choice Merchant Agreement, Choice is registered with the Card Brands under Esquire's sponsorship as an Independent Sales Organization ("ISO") and Member Service Provider ("MSP"), which means that Choice is authorized to solicit merchants for payment processing services with Esquire and perform certain Program Services on behalf of Esquire, including application processing, customer service and statement preparation **not** affording access to account data or transaction data.

17.      As the sponsor bank, Esquire must at all times be entirely responsible for, and must manage, direct and control, all aspects of its Program and Program Services performed by Choice, and establish and enforce all Program management and operating policies in accordance with the Card Brand Rules.

18.      The Card Brand Rules require that a merchant agreement must include a separate or distinct fee disclosure (a "Fee Disclosure"). The Fee Disclosure must clearly and conspicuously detail the methodology by which each merchant fee (a "Fee") is calculated. For this purpose, a "Fee" means any charge by an acquirer to a merchant related to or arising from the merchant agreement, including but not limited to transaction processing charges; authorization, clearing or settlement charges; the pass-through of any acquirer obligation to a third party; and any merchant

agreement termination charge. Moreover, the method used to calculate each Fee listed in the Fee Disclosure, including any conditions, terms or contingencies that are or could be applicable to the Fee, must be clearly explained in plain terms. Proper disclosure of such fees is a mandatory condition precedent to a member bank's right to charge such fees to a merchant.

19.     One category of transaction processing charges important for purposes of this Complaint are transaction fees related to cardholder disputes and chargebacks. A chargeback occurs when a cardholder or the card issuing bank disputes a sales transaction and requests a reversal of the charge from the acquiring bank. When a chargeback occurs, it is common for the acquiring bank to charge the merchant a "chargeback fee" for each chargeback. For a small percentage of chargebacks, the acquiring bank must "retrieve" the original receipt; and it is common for the acquiring bank to charge the merchant a "retrieval fee" in those situations where an acquirer must "retrieve" the original receipt.

20.     In those situations where a merchant rejects a chargeback, the acquiring bank "re-presents" the transaction to the issuing bank, along with evidence against the cardholder's claim. Thus, it is common for the acquiring bank to charge a merchant a "representment fee" each time it re-presents a transaction. Finally, an acquirer may also charge a merchant a "dispute fee" for certain types of returns. For example, RDR is a pre-dispute resolution system built on the Visa network and Verifi platform. Verifi offers the ability to resolve disputes and avoid the dispute process at the pre-dispute state, preventing chargebacks. But, RDRs are agreed upon between the merchant and the card issuing bank, and are then sent to the acquiring bank for processing as part of the daily Visa reports because, if the RDR is not processed, the money does not move from the acquiring bank back to the card issuing bank. Thus, it is common for acquirers to charge a merchant a "dispute fee" for processing RDRs. But, of course, each of these fees must be clearly and conspicuously disclosed on the Fee Disclosure as a condition precedent to the acquirer charging such fees to the merchant.

**B.      *The Choice Merchant Agreement***

21.      In or around January 2023, Plaintiff applied to Defendants for a merchant account (for the purpose of accepting payment cards online) by completing and signing a standard form "Merchant Application and Agreement" bearing the designation "Form of Merchant Agreement 04-07-2021" in the bottom left corner of each and every page of the attached Merchant Agreement Terms and Conditions. The Merchant Application, together with the attached Merchant Agreement Terms and Conditions, constitute the "Choice Merchant Agreement."

22.      A representative example of the form agreement between Plaintiff and Defendants (and between members of the Class and Defendants) is attached hereto as **Exhibit A** and incorporated herein by this reference as though set forth in full.

23.      Each Class member entered into a Choice Merchant Agreement with Defendants. The relevant terms of the Choice Merchant Agreement are substantively the same for each Class member.

24.      Page 2 of the Merchant Application provides as follows:

**MERCHANT ACCEPTANCE AND AGREEMENT**
By executing this Merchant Application and Agreement on behalf of the merchant described above (the "Merchant"), the undersigned individual(s): (i) represent(s) and warrant(s) that all information contained in the application portion of this Merchant Agreement is true, correct and complete as of the date of this Merchant Application and Agreement, and that such individual(s) have the requisite corporate power and authority to complete and submit this Merchant Application and Agreement and make and provide the acknowledgments, authorizations and agreements set forth below, both on behalf of the Merchant and individually; (ii) acknowledge(s) that the information contained in the application portion of this Merchant Agreement is provided for the purpose of obtaining, or maintaining a merchant account with Bank and CHOICE on behalf of the Merchant; (iii) authorize(s) Bank and CHOICE to investigate the credit of the Merchant and each person listed on this Merchant Application; (iv) agree(s), on behalf of the Merchant and in the event this Merchant Application is accepted and executed by Bank and CHOICE, to the Fee Schedule set forth above, to the addendums and to the Terms and Conditions included with and incorporated into this Merchant Agreement. Merchant understands that this Agreement shall not take effect until Merchant has been approved by Bank and CHOICE and a merchant number is issued.

25.     Thus, upon Defendants' approval of Plaintiff's Merchant Application and issuance of a merchant account in Plaintiff's name, the Choice Merchant Agreement became a valid and enforceable contract between the parties.

26.     The Choice Merchant Agreement is thirteen pages in total.

27.     The Merchant Application portion of the Choice Merchant Agreement consists of four pages:

a.  **the first page** is the application portion of the Merchant Application, which elicits information about the business applying for the merchant account, including DBA Information (i.e. the DBA or trade name for the merchant, types of goods or services sold, and website address), Corporate/Legal Information (i.e. corporate/legal name, corporate address, federal tax ID, and contact information), Ownership and Management Information (i.e. form of entity, principals and management), Sales Method (i.e. card present, or card-not-present), and Bank Account Information (i.e. account name, routing number and account number);

b.  **the second page** includes a section called "Schedule of Fees," which is the mandatory Fee Disclosure portion of the Choice Merchant Agreement required by the Card Brand Rules. Immediately below the Schedule of Fees is the "Merchant Acceptance and Agreement" section (quoted above), whereby by executing the signature box, the merchant represents and warrants the truthfulness and completeness of the information provided in the application, and agrees to be bound by the Schedule of Fees and Terms and Conditions if the application is approved by Defendants; and a Personal Guarantee, whereby by executing the signature box the merchant principal personally guarantees the merchant's obligations under the Choice Merchant Agreement.

c.  **The third page** consists of a Bank Disclosure identifying Esquire as the member bank and enumerating certain responsibilities of Esquire and the merchant under

the Choice Merchant Agreement, and the Card Brand Rules, which are incorporated by reference into the Choice Merchant Agreement; and

    d.    **the fourth page** is a MOTO & Internet Questionnaire which elicits additional information about the sales activities of merchants that sell products or services by Mail Order, Telephone Order, or the Internet.

28.    The Choice Merchant Agreement Terms and Conditions ("Terms and Conditions") comprise pages five through thirteen of the Choice Merchant Agreement.

29.    Section 1 of the Terms and Conditions in relevant part provides that "Choice is responsible for providing or otherwise securing the provision of (i) all Services to Merchant pursuant to this Agreement and all applicable Rules, (ii) the establishment and implementation of pricing to merchants for the Services and other goods and services identified in this Agreement, (iii) the collection of all fees and charges payable under this Agreement from Merchant pursuant to the Schedule of Fees or otherwise…"

30.    The Terms and Conditions define "Rules" to mean "all rules, by-laws, standards and procedures adopted and/or amended from time to time by the [Card Brands] …, Bank and each relevant issuer."

31.    The Terms and Conditions define "Services" to mean "the transaction processing services described in this Agreement, as the same may be amended from time to time by Service Providers, in their sole discretion."

32.    Section 7 (on page 2) of the Terms and Conditions is captioned "Fees" and states that "Merchant shall pay to Choice all fees specified on the Schedule of Fees, as amended from time to time."

33.    The Schedule of Fees set forth on page 2 of the Merchant Application enumerates and discloses the Fees related to or arising from the Choice Merchant Agreement. As demonstrated in the screenshot below, the Schedule of Fees from the Choice Merchant Agreement between Plaintiff and Defendants provides for the following Fees:

**SCHEDULE OF FEES**

| VISA®/MasterCard®/Discover® Regulated Check Card | 2.75 % + ____ c Authorization | | Amex Qualified Card® .................................................... % + ____ c Authorization |
|---|---|---|---|
| Batch Header .............................................$0.25 | ☐ Cost Plus | | PIN Debit Fees Plus ................................................... % + 35 c |
| Voice Authorization Fee ...............................$0.60 | ☐ Tier Pricing | | EBT Transaction Fee ...................................... $ .20   Authorization |
| Monthly Service Fee ....................................$15.00 | ☐ Flat Pricing | | Semi-Annual Technology Update/Compliance Fee ........ $0.00 |
| Account Setup Fee (one time).......................$99.00 | Notes: | | Debit Gateway (monthly) ................. $5.00   (Only applies with use of pin-pad) |
| Annual Service Fee .....................................$69.00 | FLAT RATE 2.75% | | Monthly Minimum Fee ..................................... $ 50.00 |
| Monthly 100K Data and Breach Protection .....$15.00 | | | AVS Fee ....................................................... $ 0.00 |

Additional charge for all charge cards of .00   % will apply. A surcharge of 0.00   % plus $0.0   cents for all mid qualified transactions. All nonqualified transactions surcharged0.00   % plus 0.00   cents per transaction. Rewards card types will bump to a midqualified transaction. On all interchange plus model pricing a .00   % surcharge will apply for all card types. Card association's network transaction fees, assessments, a $0.10 per transaction fee, and an American Express related assessment of 0.0015 bps will be charged. The assessment will not apply to cash discount or flat pricing accounts. PIN debit network fees include base switch, acquirer, interchange and other network association expenses. Fees of$25   per retrieval request, $25   per chargeback, $25   per representment, $25   per dispute, and $25   per returned ACH item. An annual PCI Compliance Fee of $89.00   will be billed to your November merchant statement. Unregulated signature debit cards transactions will process at the corresponding credit card rate unless otherwise specified. Merchant will pay all acceptable Card Brand registration fees. In consideration of risk and other business factors, CMS may apply a risk assessment at its discretion, up to 0.0049 over the interchange costs, which is exclusive of all other schedule of fees. This Schedule of Fees does not provide all information pertinent to this Merchant Agreement. Merchant is advised to thoroughly review this Agreement, including the attached terms and conditions, and to contact CMS or Bank with any questions. THIS IS AN AUTOMATICALLY RENEWABLE 36 MONTH MERCHANT CONTRACT. CANCELLATION DURING THE TERM WILL RESULT IN A $00.00   EARLY TERMINATION FEE. MERCHANT AGREES TO COMPLY WITH PCI COUNCIL DATA SECURITY STANDARDS (HEREINAFTER DEFINED) WITHIN 90 DAYS AFTER SIGNING THIS AGREEMENT. FAILURE TO DO SO WILL RESULT IN AN ADDITIONAL $50.00 MONTHLY FEE UNTIL MERCHANT BECOMES COMPLIANT. THE ABOVE SCHEDULE OF FEES IS PREDICATED ON THE BUSINESS:

34.     With respect to transaction processing charges related to chargebacks and disputes, the Schedule of Fees from the Choice Merchant Agreement between Plaintiff and Defendants provides for a fee of $25 per retrieval request, $25 per chargeback, $25 per representment, and $25 per dispute.

35.     ***The Schedule of Fees does not identify or describe any other chargeback-related fee***.

36.     Nonetheless, despite its lack of disclosure in the Schedule of Fees, the term "Monthly Chargeback Violation" appears twice in the Choice Merchant Agreement: once in the Definitions portion of the Terms and Conditions (section 2), which states: "'<u>Monthly Chargeback Violation</u>,' for any given calendar month, means that more than five Chargebacks have been processed in that month and that the Transaction Chargeback Ratio for that month is equal to or greater than 1%"; and again, in section 15 of the Terms and Conditions, titled "Chargebacks," which states in relevant part:

> In addition to any other remedy available to [Defendants], upon the occurrence of a Monthly Chargeback Violation, Merchant must pay to Choice a fee that is calculated based on the Schedule of Fees set forth in this Agreement

There is no period after the word "Agreement." Instead, a table for calculating the Monthly Chargeback Violation fee appears directly below the word "Agreement" as follows:

occurrence of a Monthly Chargeback Violation, Merchant must pay to CHOICE a fee that is calculated based on the Schedule of Fees set forth in this Agreement

| Y | 1.0%<X ≤1.5% | 1.5%<X ≤2% | 2%<X ≤2.25% | 2.25% <X≤2.5% | 2.5%<X ≤3% | 3%<X ≤3.5% | 3.5%<X ≤5% | 5%<X ≤7.5% | 7.5%<X |
|---|---|---|---|---|---|---|---|---|---|
| 5-25 | $0 | $10 | $10 | $15 | $15 | $20 | $25 | $40 | $50 |
| 26-50 | $10 | $10 | $15 | $15 | $20 | $20 | $25 | $40 | $50 |
| 51-75 | $15 | $20 | $20 | $20 | $25 | $25 | $30 | $50 | $50 |
| 76-100 | $15 | $20 | $20 | $25 | $25 | $30 | $35 | $50 | $50 |
| 101-125 | $20 | $20 | $25 | $25 | $30 | $35 | $35 | $60 | $60 |
| 126-150 | $20 | $25 | $25 | $30 | $35 | $35 | $40 | $75 | $75 |
| 151-175 | $25 | $30 | $30 | $35 | $35 | $40 | $40 | $75 | $100 |
| 175+ | $25 | $30 | $35 | $35 | $40 | $40 | $50 | $100 | $100 |

37.    Thus, when a merchant satisfies both conditions of the Monthly Chargeback Violation definition – ***by generating more than five chargebacks <u>and</u> a Transaction Chargeback Ratio of greater than 1% in a given calendar month*** – the plain language of section 15 allows Defendants to assess a ***single*** Monthly Chargeback Violation fee of $0 to $100 against the account, with the precise amount to be calculated by reference to the above table based upon the number of Chargebacks (Y) and the Transaction Chargeback Ratio (X). For example, for an account that generates (1) between 51 and 75 Chargebacks, and (2) a Transaction Chargeback Ratio of greater than 7.5% in a given month, the plain language of section 15 would allow Defendants to assess a single Monthly Chargeback Violation fee of $50 against the account.

38.    However, in practice, Defendants assess Monthly Chargeback Violation fees far in excess of the amount authorized in the agreement. A review of Plaintiff's April 2023 Monthly Billing Statement for its merchant account shows a total of 54 Chargebacks, and a Transaction Chargeback Ratio of 15.7% (54 chargebacks divided by 343 total sales transactions for the month). While section 15 on its face purports to allow Defendants to charge a single Monthly Chargeback Violation fee of $50 against the account (on top of the $25 per chargeback fee provided for in the

Schedule of Fees), the Monthly Billing Statement issued to Plaintiff reflects a single "Enhanced Chargeback" fee of $4,000 as follows:

## MONTHLY BILLING STATEMENT
### APRIL, 2023

**choice**

1-800-539-9116
**CHOICE MERCHANT SOLUTIONS**
10 Columbus Blvd Floor 6
Hartford, CT 06106

A Registered ISO/MSP of Esquire Bank
Garden City, NY 11530

PRINT YOUR PLAQUES LLC
651 N BROAD ST STE 205
MIDDLETOWN, DE 19709

PRINTYOURPLACES.COM
3000 OLD ALABAMA ROAD
ALPHARETTA, GA 30022

MERCHANT # 630400066852
CHECKING # xxxxxx551
TRANSIT # xxxxxx227

### CARD SUMMARY

|  | ITEMS | AMOUNT | UNSETTLED |  | RESERVE | RESERVE HELD |  |
|---|---|---|---|---|---|---|---|
| Sales | 343 | $25,761.29 | 0 | $0.00 | 0.00% | $0.00 |  |
| Credits | 6 | $327.96 | 0 | $0.00 | Discount Fees |  | $521.42 |
| Debit | 0 | $0.00 | 0 | $0.00 | Other Fees |  | $7,272.41 |
| Total | 349 | $25,433.33 | 0 | $0.00 | **Total Charges For The Month** |  | **$7,793.83** |

### SUMMARY OF CARD FEES

| Program Pricing | RATE | ITEMS | VOLUME | FEE | | | | FEE |
|---|---|---|---|---|---|---|---|---|
| V Prod 1 CNP SP/NT | 2.9% + $0.25 | 18 | $1,275.54 | $41.49 | **Card Brand** | | | |
| V Card Not Pres Deb | 2.05% + $0.30 | 46 | $3,513.11 | $85.82 | APF Credit | | | $1.08 |
| V Pur CNP | 3.1% + $0.25 | 1 | $93.56 | $3.15 | APF Debit | | | $4.02 |
| V For Standard | 2% + $0.15 | 5 | $418.40 | $9.13 | Assessment A | 1538.82 | 0.0031 | $4.77 |
| V Bus T2 Prd 1 | 3.2% + $0.25 | 1 | $59.90 | $2.17 | Cross Border/Acq Sup | 534.34 | 0.0145 | $7.75 |
| V Bus T3 Prd 1 | 3.25% + $0.25 | 1 | $56.90 | $2.10 | CVC 2 | 82 | 0.0025 | $0.21 |
| V Reg Debit | 0.45% + $0.37 | 114 | $8,564.16 | $80.72 | D AVS Fee | 12 | 0.005 | $0.06 |
| V PP CNP | 2.15% + $0.35 | 15 | $1,151.85 | $30.01 | DEF | 226.59 | 0.0001 | $0.02 |
| V PP Comm CNP | 3.05% + $0.25 | 2 | $177.70 | $5.92 | DEF Min | 77 | 0.02 | $1.54 |
| V Services SP/NT | 2.8% + $0.25 | 1 | $123.75 | $3.72 | DNAF | 12 | 0.0025 | $0.03 |
| V Prod 1 CNP T/NT | 2.29% + $0.25 | 9 | $751.55 | $19.46 | DUC | 12 | 0.02 | $0.24 |
| V Prod 1 CNP R/NT | 2.44% + $0.25 | 9 | $655.80 | $18.25 | Dues/Assess D | 905.2 | | $1.27 |
| V Reg Deb Bus CNP | 0.45% + $0.37 | 2 | $148.79 | $1.41 | Dues/Assess M | 5627.71 | | $7.32 |
| V Prod 1 CNP S/NT | 2.45% + $0.25 | 9 | $713.55 | $19.73 | Dues/Assess V | 17704.56 | | $23.41 |
| MC Merit 1 Debit | 2.05% + $0.30 | 30 | $2,192.46 | $53.95 | FANF | 1 | 22.5 | $22.50 |
| MC World Merit 1 | 2.6% + $0.25 | 4 | $274.96 | $8.15 | File Transfer | 237 | 0.0018 | $0.43 |
| MC EV Merit 1 | 2.5% + $0.25 | 5 | $344.35 | $9.86 | IAF | 418.4 | 0.0045 | $1.88 |
| MC WE/HV Merit 1 | 3% + $0.25 | 10 | $837.40 | $27.62 | ISA | 418.4 | 0.01 | $4.18 |
| MC IR Consumer 1 | 2% + $0.15 | 5 | $442.40 | $9.60 | MClaims | 29 | 3.05 | $88.45 |
| MC Reg Debit | 0.45% + $0.36 | 1 | $59.90 | $0.63 | NABU | | | $2.61 |
| MC Reg Debit/Fraud | 0.45% + $0.37 | 18 | $1,239.55 | $12.24 | Non-Swiped A | 1538.82 | 0.003 | $4.62 |
| MC PP Merit 1 | 2.16% + $0.35 | 1 | $84.85 | $2.18 | Trans Integrity D | 10 | 0.1 | $1.00 |
| MC IR Consumer 1 P | 2.25% + $0.15 | 1 | $91.94 | $2.22 | V AVS | 246 | 0.005 | $1.23 |
| MC Merit 1 | 2.35% + $0.25 | 1 | $59.90 | $1.66 | VForeign | 6 | 0.02 | $0.12 |
| D Base Level | 3.45% + $0.25 | 10 | $779.50 | $29.39 | | | | $178.74 |
| D Comm Elect | 2.85% + $0.30 | 2 | $125.70 | $4.18 | | | | |
| A Services Micro | 2% + $0.19 | 1 | $9.95 | $0.39 | **Merchant Auths** | | | |
| A Services T1 | 2.05% + $0.25 | 21 | $1,513.87 | $36.28 | Auth A | 22 | 0.25 | $5.50 |
| Totals | | 343 | $25,761.29 | $521.42 | Auth Fee | 255 | 0.25 | $63.75 |
| | | | | | Auth Fee D | 12 | 0.25 | $3.00 |
| | | | | | Auth Fee M | 85 | 0.25 | $21.25 |
| | | | | | | | | $93.50 |
| | | | | | **Miscellaneous** | | | |
| | | | | | Acquirer Network | 1 | 17.63 | $17.63 |
| | | | | | AVS FEE | 374 | 0.15 | $56.10 |
| | | | | | Batch Fee | 30 | 0.1 | $3.00 |
| | | | | | Breach Protection | 1 | 15 | $15.00 |
| | | | | | Chargeback | 54 | 25 | $1,350.00 |
| | | | | | Dispute Resolution | 31 | 25 | $775.00 |
| | | | | | Enhanced Chargeback | 1 | 4000 | $4,000.00 |
| | | | | | Mnthly Discount | 25761.29 | 0.0275 | $708.44 |
| | | | | | Monthly Fee | 1 | 25 | $25.00 |
| | | | | | RETRIEVAL FEE | 2 | 25 | $50.00 |
| | | | | | | | | $7,000.17 |

11

39.     Based on information and belief, Plaintiff alleges that the undefined term "Enhanced Chargeback" refers to the "Monthly Chargeback Violation" fee provided for in section 15 of the Choice Merchant Agreement.

40.     The Schedule of Fees does not identify, provide for, or disclose any Monthly Chargeback Violation or Enhanced Chargeback fee.

41.     The Card Brand Rules incorporated by reference into the Choice Merchant Agreement prohibit Defendants from charging a Monthly Chargeback Violation or Enhanced Chargeback fee to their merchants in the first instance.

42.     Moreover, because section 15 of the Choice Merchant Agreement plainly states that, in situations like this one where a merchant satisfies both conditions of the Monthly Chargeback Violation definition, Defendants may assess no more than a maximum Monthly Chargeback Violation fee of $100 per month against the account, the "Enhanced Chargeback" fee assessed by Defendants plainly exceeds the maximum fee allowed under the terms of the Choice Merchant Agreement.

43.     Section 16 of the Choice Merchant Agreement, captioned "Merchant Statement," states:

> At least once each month, CHOICE shall provide a statement (the "Merchant Statement") to Merchant. All information appearing on the Merchant Statement shall be deemed accurate and affirmed by Merchant unless Merchant objects by written notice specifying the particular item in dispute within 30 days of the date of the Merchant Statement.

44.     On or about February 9, 2023, Defendants approved Plaintiff's Merchant Application and issued a merchant account to Plaintiff.

45.     Shortly thereafter, Plaintiff began processing sales transactions through its account.

46.     On or about February 14, 2023, before Plaintiff received its first Merchant Statement, Plaintiff noticed that it had already been overbilled by more than $10,000 for gateway fees on the account and Plaintiff's representative immediately emailed Choice's then Senior Vice President of Sales and Customer Success, Marc Tenore, to object to the overbilling of these fees.

47.     On or about March 1, 2023, Plaintiff received its first monthly Merchant Statement

for February 2023's processing activity.

48.     Plaintiff promptly reviewed the Merchant Statement and identified significant overbilling issues related to the monthly processing fee on top of the overbilling of the gateway fees to which it had already objected. Plaintiff's representative immediately called Mr. Tenore to reiterate Plaintiff's objections to these fees.

49.     Plaintiff did not receive a copy of its Merchant Statement for March 2023's processing activity, but obtained a copy through the Choice merchant portal. Once again, Plaintiff identified fee issues and Plaintiff's representative called Mr. Tenore to object.

50.     Mr. Tenore repeatedly promised that Choice would issue a refund to Plaintiff to reimburse Plaintiff for the overbilled fees, more than $10,000 of which dated back to February 14, 2023.

51.     On or about May 5, 2023, Plaintiff received its Merchant Statement for April 2023's processing activity.

52.     Plaintiff identified the Enhanced Chargeback fee, which appeared for the first time on the April 2023 statement. Plaintiff's representative promptly called Mr. Tenore to object to the Enhanced Chargeback fee, and complain about Choice's failure to issue the promised refund.

53.     On or about May 12, 2023, Plaintiff's representative also emailed Mr. Tenore, stating:

> As of this morning, May 12th 2023, we have not received our consistently promised refund due to overbilling on Print Your Plaques LLC. I have reached out over 3 times regarding the overbilling of the monthly processing fee and the overbilling on the gateway. My screenshots within the email speak for themself, and I do not feel the need to reiterate what has been stated in previous correspondence. All I will say is that its (sic) been 2 weeks + since my last escalated email....
>
> Additionally, we rejected this month's fees due to the overbilling and accounts payable Choice Payments already has. This will not occur going forward as long as we are squared up.
>
> I have reached a point in the sand, where either Choice will release the ENTIRE reserve balance (please include a ledger) + the gateway fee effective immediately or we will be swapping back to Stripe Hard to justify saving 2 bips in exchange for an operational nightmare.

54.     Later that month, Plaintiff stopped all processing activity through its merchant

account due to Choice's failure to satisfactorily address these issues in a complete and timely manner.

55.     Plaintiff's representative continued communicating with Mr. Tenore from time to time about these issues over the next couple of months but failed to reimburse any of the  disputed fees.

56.     By late August 2023, however, Choice still had not released Plaintiff's reserve funding or reimbursed the Enhanced Chargeback fee. Accordingly, on or about August 26, 2023, during a telephone call with Mr. Tenore, Plaintiff's representative complained that these items were still outstanding and had yet to be resolved.

57.     Mr. Tenore represented that, as he had previously promised back in May 2023, Choice would "take care of" the Enhanced Chargeback fee. Mr. Tenore also stated that Choice would promptly release the reserve funding.

58.     On Monday, August 28, 2023, Plaintiff's representative followed this phone call with an email to Mr. Tenore, stating:

> Marc,
> Just wanted to list out and follow up with you from our conversation this weekend.
> 2 items I need
> 1.  Reserve funding released (Print Your Places + Print Your Songs)
> 2.  Enhanced CB fee reimbursement

59.     Mr. Tenore immediately responded: "Received. I'm on it." However, the Enhanced CB fees were not reimbursed.

60.     Consequently, Plaintiff objected to the Enhanced Chargeback fees by written notice within the 30-day period following the issuance of the merchant statement. Yet, despite their impropriety, the Enhanced Chargeback fees assessed by Defendants were not refunded.

61.     In addition to refusing to refund Enhanced Chargeback fees upon objection asserted during the 30-day window following the issuance of the Merchant Statements, Choice has also implemented a strategy aimed at foreclosing the prospect of such an objection altogether by preventing its merchants from actually seeing their Merchant Statements, thereby effectively preventing the subject merchant from identifying any improper charges, including the Enhanced Chargeback fees, and challenging same in a manner mandated by the Choice Merchant Agreement.

62.     Specifically, for most merchants who experience elevated chargeback levels, their accounts are terminated outright by Choice. Upon termination, these merchants' access to the Choice portal containing Merchant Statements is terminated. Merchant Statements are not otherwise mailed or delivered through alternate means to the terminated merchants.

63.     The natural result of the subject termination is that the affected merchants cannot access their Merchant Statements and are prevented from ascertaining whether an Enhanced Chargeback fee has or has not been assessed or, if it was assessed, in what amount.  The impact of this practice by Choice is that the affected merchants are foreclosed from challenging the assessed Enhanced Chargeback fees within the mandated 30-day period "of the date of the Merchant Statement" due to Choice's deliberate withholding of the subject Merchant Statements.

## CLASS ALLEGATIONS

### A.     Definition of the Class

64.     Plaintiff brings this class action on behalf of itself and on behalf of the following proposed Class, initially defined as follows:

> All businesses or entities who have entered into the Choice Merchant Agreement with Defendants in the United States and who were subsequently charged "Monthly Chargeback Violation" / "Enhanced Chargeback" fees by Defendants, (A) in any amount, and/or (B) in an amount calculated by assessing the fees set forth in the chart in section 15 on a *per chargeback* basis, rather than on a *monthly* basis (the "Class").

65.     Plaintiff reserves the right to redefine the class definition prior to class certification and after having the opportunity to conduct discovery.

### B.     The Class Satisfies the Requirements of Rule 23

66.   This action is properly brought as a class action under Rule 23 for the following reasons:

a.   **Numerosity:** The Class is so numerous and geographically dispersed throughout the United States that the joinder of all class members is impracticable. While Plaintiff does not know the exact number and identity of the members of the Class, Plaintiff is informed and believes that there are more than 100 members in the Class. The precise number of members in the Class may be ascertained through discovery.

b.   **Commonality and Predominance:** There are questions of law and fact common to the Class which predominate over any questions that may affect particular

members of the Class. Such common questions of law and fact include, but are not limited to:

     i.   Whether Defendants breached the Choice Merchant Agreement by charging members of the Class a Monthly Chargeback Violation / Enhanced Chargeback fee without disclosing the fee in the Schedule of Fees on page 2 of the Choice Merchant Agreement;

    ii.   Whether Defendants breached the Choice Merchant Agreement by charging members of the Class a Monthly Chargeback Violation / Enhanced Chargeback fee in excess of the Monthly Chargeback Violation fee provided for in section 15 of the Choice Merchant Agreement;

   iii.   Whether the Choice Merchant Agreement fails to comply with Visa and/or Mastercard standards for prominent fee disclosures in connection with its identification of the Monthly Chargeback Violation / Enhanced Chargeback fee;

   iv.   Whether the Choice Merchant Agreement is impermissibly ambiguous in its delineation of the Monthly Chargeback Violation / Enhanced Chargeback fee;

    v.   Whether Defendants breached the covenant of good faith and fair dealing by their conduct as alleged herein; and

   vi.   Whether Defendants were unjustly enriched by their conduct as alleged herein.

c.  **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the members of the Class have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of each of the other members of the Class and are based on the same legal theories.

d.  **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interest antagonistic to the interests of the

other members of the Class, and Plaintiff has retained attorneys experienced in payments law, class actions, and complex business litigation.

e. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    i. This action will promote an orderly and expeditious administration and adjudication of the claims of the Class; economies of time, effort and resources will be fostered; and uniformity of decisions will be ensured;

    ii. Without a class action, members of the Class will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct;

    iii. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action; and

    iv. Finally, as the damages suffered by some of the individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.

67. Defendants have, or have access to, address information for each of the members of the Class, which may be used for the purpose of providing notice of the pendency of this class action.

68. Plaintiff seeks damages and equitable relief on behalf of the Class on grounds generally applicable to the entire Class.

69. In the alternative, common questions of fact and law are appropriate for issue certification on behalf of the proposed Class.

70. **Application of New York Law:** New York law should be applied to the Class because the Choice Merchant Agreement entered into between Plaintiff and each of the other members of the Class, on the one hand, and Defendants, on the other hand, provides for New York law.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against All Defendants)

71.     Plaintiff re-alleges and hereby incorporates by reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

72.     This cause of action is brought on behalf of all Class members.

73.     Plaintiff and each of the other members of the Class contracted with Defendants for payment processing services by entering into the Choice Merchant Agreement with Defendants.

74.     The Choice Merchant Agreement is a valid, enforceable contract.

75.     Plaintiff and each of the other members of the Class fully and faithfully performed all obligations owed to Defendants under the Choice Merchant Agreement, except for such obligations that have been excused or prevented by virtue of Defendants' conduct, which conduct includes but is not limited to the conduct set forth in Paragraphs 61 through 63 above

76.     Defendants have materially breached the Choice Merchant Agreement by charging Plaintiff and each of the other members of the Class a Monthly Chargeback Violation / Enhanced Chargeback fee without disclosing the existence of the fee or its method of calculation in the Schedule of Fees, as required by the Card Brand Rules incorporated by reference into the Choice Merchant Agreement, which mandate such proper disclosure as a condition precedent to Defendants' ability to charge such a fee.

77.     Defendants have materially breached the Choice Merchant Agreement by charging Plaintiff and each of the other members of the Class a Monthly Chargeback Violation / Enhanced Chargeback fee in excess of the Monthly Chargeback Violation fee provided for in section 15 of the Choice Merchant Agreement, which provides for a maximum fee of $100 per month.  As a direct and proximate result of Defendants' breach of the Choice Merchant Agreement, as described above, the Class has been damaged and will continue to incur additional damages, in an amount to be proven at trial. Such damages are clearly ascertainable both in nature and in origin.

## SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

78.     Plaintiff re-alleges and hereby incorporates by reference as though set forth in full

each of the allegations contained in the preceding paragraphs of this Complaint.

79.    This cause of action is brought on behalf of all Class members.

80.    The Choice Merchant Agreement is a valid, enforceable contract.

81.    New York law implies a covenant of good faith and fair dealing in every contract under which each party covenants to the other party that it will act in good faith, deal fairly, and do nothing to deprive the other party of the benefits of the contract.

82.    Defendants interfered with the Class members' right to receive the benefit of the Choice Merchant Agreement by unilaterally and arbitrarily imposing an excessive Monthly Chargeback Violation / Enhanced Chargeback fee, calculated based on Defendants' own methodology, that substantially diminished the proceeds paid out to the Class members for their own processing transactions.

83.    By unilaterally deciding to assess the Monthly Chargeback Violation fee on a *per chargeback* basis, rather than a *monthly* basis, Defendants have arbitrarily and irrationally re-defined the terms of the Choice Merchant Agreement in a manner that substantially reduces the funds owed to the Class members.

84.    In doing so, Defendants did not act in good faith or deal fairly. Defendants' actions have deprived the Class of the benefit of their bargain with Defendants, and have breached Defendants' duty of good faith and fair dealing to the Class.

85.    As a direct and proximate result of Defendants' actions, the Class has been damaged and will continue to incur additional damage, and is entitled to compensation from Defendants for said damage in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### (Unjust Enrichment)

86.    Plaintiff re-alleges and hereby incorporates by reference as though set forth in full each of the allegations contained in the preceding paragraphs of this Complaint.

87.    This cause of action is brought on behalf of all Class members.

88.    A party cannot induce, accept or encourage another to furnish or render something of value to such party and avoid payment for the value received.

89.     As a result of the conduct described above, Defendants have been, and will continue to be, unjustly enriched at the expense of Plaintiff and each of the other members of the Class.

90.     Defendants have received, and are holding, funds belonging to the Class which in equity Defendants should not be permitted to keep but should be required to refund to the Class.

91.     Plaintiff and the Class members do not have an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and each of the members of the Class, respectfully requests that the Court:

1.     Certify this action as a class action, proper and maintainable pursuant to Fed. R. Civ. P. 23, appoint Plaintiff as a representative of the Class, and designate Plaintiff's counsel as counsel for the Class;

2.     Award Plaintiff and the Class compensatory damages for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

3.     Grant injunctive relief prohibiting Defendants from continuing to engage in the wrongful acts and practices alleged herein;

4.     Award Plaintiff and the Class all costs and expenses of the action, including reasonable attorneys' fees and expert fees;

5.     Award Plaintiff and the Class pre- and post-judgment interest at the maximum legal rate;

6.     Grant all such equitable relief as it deems proper and just, including but not limited to disgorgement and restitution; and

7.     Grant all other such relief as it deems just and proper.

//

//

//

//

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a jury trial on all issues so triable.

DATED:  April 4, 2024

By: _____/s/ Eugene Rome_____

Eugene Rome (admitted *pro hac vice*) Brianna Dahlberg *(*admitted *pro hac vice*) ROME LLP
2029 Century Park East, Suite 450
Los Angeles, CA 90067
Telephone: (310) 282-0690
Facsimile: (310) 282-0691
erome@romellp.com
bdahlberg@romellp.com
*Attorneys for Plaintiff and proposed Class Counsel*

And

_____/s/ Raphael Janove_____

Raphael Janove
JANOVE PLLC
Telephone: (646) 347-3940
500 7th Avenue, 8th Fl.
New York, NY 10018
raphael@janove.law

*Additional Counsel for Plaintiff*